Anne H. DAYE and John T. Daye, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. 1:95CV00548.

United States District Court, M.D. North Carolina, Durham Division.

Feb. 14, 1997.

---

11. *Government v. Bedford,* 671 F.2d 758, 762 (3d Cir.1982) *(citing Brown v. United States,* 411 U.S. 223, 230–32, 93 S.Ct. 1565, 1570–71, 36 L.Ed.2d 208 (1973), *quoting Lutwak v. U.S.,* 344 U.S. 604, 618–20, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)).

Laurence D. Colbert, Durham, NC, for Plaintiffs.

Mark R. McGrath, Smith Helms Mulliss and Moore, Charlotte, NC, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before the Court on Defendant's Motion for Further Sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure [Document # 17].

## I. PROCEDURAL BACKGROUND.

On May 15, 1992, Plaintiffs Anne and John Daye were involved in an automobile accident in which Anne Daye sustained serious injuries. Plaintiffs brought this action against General Motors Corporation ("Defendant") and Sharon Hunt ("Hunt"), the operator of the vehicle that struck Plaintiffs from the rear, in the Superior Court of Durham County on May 15, 1995. Plaintiffs alleged that Defendant General Motors Corporation was negligent in its design, manufacture, and assembly of the seat belt mechanism of the 1990 Chevrolet Caprice Classic in which Plaintiffs were riding at the time of the accident. Plaintiffs further allege that the seat belt mechanism in the Caprice Classic was defective in that it malfunctioned and separated into two pieces during the accident. In addition to the product liability claim, Plaintiffs alleged breach of express and implied warranties against Defendant General Motors Corporation. On July 26, 1995, Defendant gave notice of its removal of this case to the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1441. Defendant filed an Answer to Plaintiffs' Complaint on August 25, 1995.

The pretrial procedures, including the establishment of a discovery schedule, were initially delayed because Plaintiffs failed to serve a copy of the summons and complaint on Sharon Hunt. Plaintiffs' counsel, Laurence Colbert ("Colbert"); was notified of this fact by the Clerk of Court on December 19, 1995, and warned that Plaintiffs' failure to make service on Hunt would result in the case as to Hunt being dismissed without prejudice. Based upon Plaintiffs' failure to obtain service on Hunt, this Court issued an Order on January 25, 1996, dismissing Hunt from this case without prejudice.

On January 26, 1996, Plaintiffs and Defendant were notified that the Initial Pretrial Conference had been set for March 25, 1996, at 9:30 a.m. The parties were directed to hold a Rule 26(f) meeting at least fourteen days before the scheduled Pretrial Conference. The record reflects that a Rule 26(f) meeting was held at Colbert's office on March 11, 1996. Each party filed a report with respect to the Rule 26(f) meeting on March 21, 1996. After the March 25, 1996, Pretrial Conference, Magistrate Judge P. Trevor Sharp issued an Initial Pretrial Conference Memorandum and Order dated March 27, 1996, setting out provisions governing the discovery period. Judge Sharp ordered that all discovery, pertaining to both general and expert matters, was to be completed on or before November 1, 1996. Reports from experts were due from Plaintiffs by August 1, 1996, and from Defendant by August 15, 1996.

Pursuant to the discovery. plan, Defendant served Plaintiffs with a Set of Interrogatories and Request for Production of Documents and Things on June 5, 1996, with the responses due on July 8, 1996. Neither Plaintiffs nor Colbert responded to these discovery requests, and Defendant was unsuccessful in its attempts to contact Colbert to find out why the responses were not provided. Defendant's counsel advised Colbert by mail on July 16, 1996, that if Plaintiffs failed to respond by July 18, 1996, Defendant would proceed with a Motion to Compel Plaintiffs to respond to the interrogatories. As of August 5, 1996, Plaintiffs had also failed to provide a list of their experts as required by the Magistrate Judge's Pretrial Order. This delay thereby affected Defendant's ability to provide a list of their own experts.

Neither Colbert nor Plaintiffs contacted Defendant's counsel to offer any explanation for their failure to respond to inquiries from Defendant's counsel. Pursuant to Defendant's Motion to Compel Discovery and to Extend Time, Magistrate Judge Sharp ordered Plaintiffs on September 9, 1996, to "provide full and complete responses to [Defendant's] discovery requests by September 27, 1996," and awarded Defendant attorney's fees and costs incurred in pursuing its Motion to Compel. In addition to failing to respond to the court's Order, the record reflects that neither Colbert nor Plaintiffs advised the court or Defendant's counsel of any reason explaining their failure to respond.

In light of these circumstances, Defendant filed its Motion for Further Sanctions pursuant Federal Rule of Civil Procedure 37(b)(2) on October 9, 1996.[1] Colbert and Plaintiffs again failed to respond to Defendant's Motion. On November 4, 1996, Defendant's Motion for Further Sanctions was submitted to this Court for determination. At the Court's direction, Colbert was notified by letter of November 7, 1996, of his failure to respond to Defendant's Motion for further Sanctions and advised that, unless excusable neglect could be shown for Plaintiffs' failure to respond to the motion, the motion for sanctions, *"including dismissal,"* would be referred to the Court on November 21, 1996, for consideration as an unopposed motion.

At approximately 6:00 p.m. on November 21, 1996, Colbert, instead of responding to Defendant's Motion, filed a Motion to Extend Time until November 26, 1996, to file a detailed response to show excusable neglect for Plaintiffs' failure to adhere to the discovery plan and comply with the Court's direct Or-

---

1. Defendant filed a number of other Motions to preserve its ability to proceed in this case despite the fact that Plaintiffs had not responded to any prior discovery requests. These additional motions, which include a Motion for Extension of Discovery Period for Purpose of Conducting Mediation and a Notice of Intent to File Motion for Summary Judgment, are not germane to the issue before the Court and as such are not dealt with in this Memorandum Opinion.

ders. The Court ordered that Colbert respond to Defendant's Motion by 5:00 p.m. on November 25, 1996, instead of November 26, 1996, as he had requested. On November 25, 1996, Colbert, on behalf of Plaintiffs, filed a Response to Defendant's Motion for Sanctions, contending that he suffered from illness that impaired his ability to work during the period in question. Colbert offers the further explanation that the attorneys he had hired to assist him during this period of time terminated their respective relationships with him in June and July, 1996. He contends that the departure of these attorneys "severely impacted" his ability to deal with the matters involved in the case. Colbert therefore argues that his own negligence qualifies as excusable neglect not attributable to Plaintiffs. The record is devoid of evidence, however, evidencing any affirmative action taken by Plaintiffs to pursue their action vigorously before this Court. In order to address the matters presented in this case, the Court scheduled a hearing on Defendant's Motion for Further Sanctions for December 17, 1996. As a result of the hearing and for the reasons stated herein, the Court will grant Defendant's Motion for Further Sanctions and order Plaintiffs' claims dismissed with prejudice.

## II. DISCUSSION.

### A. Standard of Review.

Sanctions for a party's failure to observe discovery orders are governed by Rule 37(b)(2) of the Federal Rules of Civil Procedure. Rule 37(b)(2) provides that

[i]f a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

. . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including the attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b)(2). It is generally recognized that the imposition of sanctions pursuant to Rule 37(b) lies within the sound discretion of the trial court. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). While the range of the district court's discretion is "more narrow" in cases involving dismissal or judgment by default, *see Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–04 (4th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978); *see also Robinson v. Yellow Freight System*, 132 F.R.D. 424, 427 (W.D.N.C.1990), *aff'd*, 923 F.2d 849 (4th Cir.), *cert. denied*, 502 U.S. 831, 112 S.Ct. 106, 116 L.Ed.2d 76 (1991), there are four factors for a court to examine in the determination whether to impose such a sanction. In *Mut. Fed. Sav. & Loan v. Richards & Assocs.*, 872 F.2d 88 (4th Cir.1989), the Fourth Circuit enumerated these factors:

(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into

the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Id.* at 92 (citing *Wilson,* 561 F.2d at 503–06).

B. Analysis.

■ In examining the factual circumstances in this case in light of the Fourth Circuit's *Mutual Federal Savings & Loan* test, it is evident that dismissal of Plaintiffs' cause of action is an appropriate sanction. With respect to the first factor, there is substantial evidence that the failure of Plaintiffs to respond to Defendant's discovery requests is a product of bad faith on the part of Plaintiffs and their counsel Colbert. The evidence of Plaintiffs' bad faith is highlighted by the fact that, even though Plaintiffs were previously sanctioned for costs and fees by Magistrate Judge Sharp for failing to respond to discovery requests, Plaintiffs did not comply with Magistrate Judge Sharp's Order. Furthermore, Colbert as their counsel did not respond to or otherwise acknowledge any communication from Defendant for over six months. Plaintiffs cannot be excused for sitting idly by while their case was not being pursued in a timely fashion, especially where their inactivity had previously been the subject of sanctions by Magistrate Judge Sharp. While Colbert argues on behalf of Plaintiffs that the illness of Colbert and the untimely departure of other attorneys in Colbert's firm resulted in Plaintiffs' failure to respond to the discovery requests, the following colloquy during the hearing on this matter indicates otherwise:

THE COURT: When was the first time the response to the discovery request was filed?

MR. COLBERT: The response to the discovery request was filed at the time we filed the response to the motion. And again, I say that we were tied up in a heavy caseload. I managed to hire a new assistant to take over most of the state court cases.

THE COURT: *Are you saying that you elected not to work on the matter that was involved in this court. but spent your time on the state cases?*

MR. COLBERT: *Your Honor I'll admit. it was a conscious election not to work on it. It was something where it got out of my control and I lost attention to the case. So I would say that it wasn't a conscious election to try and neglect it. I think that my client did think that we had complied with it . . . .*

*. . . .*

*Like I said. I lost control of the case and was not consciously ignoring anything. It was more a matter of trying to, I guess. get caught up on a bad case load, on a heavy case load . . . .*

(Emphasis added.) Colbert's apparent deference to his state court matters and his otherwise unexplained inattention to the discovery schedule as arranged with Defendant's counsel in Colbert's office do not constitute legitimate reasons for his blatant disregard for the scheduling order setting out the parameters of the discovery period. The failure of Plaintiffs and Colbert to honor the Orders of this Court and Colbert's failure to initiate any contact with Defendant's counsel for over six months constitutes both unjustifiable negligence as well as bad faith.

■ As a last ditch effort, Colbert attempts to lay the blame at his feet, contending that his inaction should not be attributed to his clients. Colbert cites *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 811 (4th Cir.1988) (per curiam), for the proposition that the negligence of counsel qualifies as excusable neglect when the client is without blame. However, the record does not reflect any meaningful action designed to move the case during the extensive life of this case by the Plaintiffs themselves. The Court inquired of Colbert at several different instances whether his clients were aware of the serious nature of the motion before the Court. Colbert's response was merely that Plaintiff Anne Daye had indicated to him that "due to her work, she couldn't be here." This is not the type of consideration to be expected of a party with notice, as Plaintiffs had here, that Defendant was seeking the severe sanction of dismissal in their case.

The Court further finds that Defendant has been prejudiced in this case by Plaintiffs' failure to act in accordance with the pretrial order. Plaintiffs have failed to provide the most elementary of discovery responses, including identification of the defect alleged in the Plaintiffs' Complaint. Colbert himself described the defect in the hearing on this matter as being both a "broken seat" and one dealing with "seat belt problems." While Plaintiffs, purportedly through Colbert, belatedly responded to Defendant's discovery requests on November 25, 1996, these responses were unverified and contained only vague allegations by Plaintiffs with respect to the claims at issue. Colbert stated that, as of the time of the hearing, he had not identified an expert on the issue of any defect, and conceded that the seat was no longer available for either party to inspect. These matters, essential to any product liability claim, are obviously material to the outcome of this case on the merits. The Court therefore finds that the failure of the Plaintiffs to produce this information as to these matters has prejudiced Defendant in its preparation for trial scheduled for April, 1997.

With respect to the need for deterrence and the effectiveness of less draconian sanctions, the Court concludes that the dismissal of Plaintiffs' claim is an appropriate sanction based upon the complete failure of both Plaintiffs and Colbert to attend to these matters after fair warning from this Court. In *Hathcock*, the Fourth Circuit Court of Appeals concluded that the trial court abused its discretion in entering a default judgment without warning the offending party of the potential ramifications of failure to abide by conditions set by the court. *See Hathcock*, 53 F.3d at 40–41. The instant case is distinguishable from *Hathcock*, in that Plaintiffs and their counsel were provided notice both through the Motion for Further Sanctions itself and by the letter of November 7, 1996, that, unless a showing of excusable neglect was made, Defendant's Motion for Sanctions, *"including dismissal,"* would be considered as an uncontested motion. Notwithstanding these warnings, Plaintiffs have yet to come forward with any meaningful discovery pursuant to Defendant's requests. Furthermore, Plaintiffs were also subjected to the preliminary deterrent, apparently without effect, of an earlier sanction for failure to respond to discovery requests.

Courts have generally held that the sanction of dismissal is an appropriate one for cases involving "serious or total failure to respond to interrogatories." *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2291, at 718 & n. 12 (2d ed.1994). It is significant in this instance that Plaintiffs never objected to the propriety of any of the interrogatories, nor did Plaintiffs offer any explanation as to their failure to respond to requests for discovery materials until "it became crystal clear that they were going to lose the case unless they did something." *Mut. Fed. Sav. & Loan*, 872 F.2d at 94. In *Mutual Federal Savings & Loan*, "the things done did not add up to an adequate 'something.'" *Id.* Such is the case here as well, because even after Plaintiffs and Colbert were given an opportunity to respond to the motion for sanctions or otherwise provide the requested discovery at a fairly late stage in the case, the responses provided were woefully inadequate [2] Plaintiffs have yet to name an expert witness, have not advised Defendant of the nature of the defect at issue in Plaintiffs' Complaint, and failed to preserve the portion of the automobile at issue for inspection by either party. More fundamentally, Plaintiffs have not to this point prof-

---

2. The conduct of Plaintiffs and Colbert since the December 17, 1996, hearing is representative of their actions that have led to this case reaching its current posture. Given the Court's concern with respect to the absence of Plaintiffs themselves at the hearing of this matter, the Court refused to accept Colbert's proffer of unverified responses by Plaintiffs to the set of interrogatories that Defendant initially filed. Colbert was directed by the Court to have these responses verified by his clients and filed with the Court. Even though a specific deadline for this request was not stated by the Court, a reasonable time could have been inferred by Colbert. Neither Plaintiffs nor Colbert have responded to the Court's instructions or offered any explanation justifying their failure to do so as of the date of this Order. Such a delay exceeds all reasonableness and is further indicative of both Plaintiffs' and Colbert's bad faith and total disregard for the Orders of this Court.

fered any information that would sufficiently state a *prima facie* case of products liability or breach of warranty. Since Plaintiffs have failed to offer any meaningful rationale for their failure to respond to Defendant's motions or to respond timely to Orders of this Court in the months since filing their Complaint, this Court concludes that the appropriate sanction under Rule 37(b) is dismissal of Plaintiffs' action.

## III. CONCLUSION.

The Supreme Court has dictated that "the most severe in the spectrum of sanctions provided by statute must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747, 751 (1976). The egregious nature of the failure of Plaintiffs and their counsel to act in accordance with the Orders of the Court makes the imposition of the most severe sanction an appropriate remedy in this case. Therefore, pursuant to Defendant's Motion for Further Sanctions, Plaintiffs' action is ordered dismissed with prejudice.

## IV. COSTS AND FEES.

■ As noted previously, Rule 37(b)(2) provides that

the court shall require the party failing to obey the order *or the attorney advising that party* or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

F.R. Civ. P. 37(b)(2) (emphasis added). Plaintiffs have been sufficiently sanctioned by Magistrate Judge Sharp's Order that Plaintiffs pay costs and fees related to the earlier Motion to Compel and this Court's dismissal of their action in this case.[3] How-

ever, pursuant to Colbert's acknowledgment that he "lost control" of his only case before this Court and in the absence of any evidence indicating that Colbert's neglect of this case was justifiable, the Court concludes that Colbert should bear the responsibility for the financial portion of the sanctions imposed by this Order. The Court therefore orders that Colbert pay costs and a reasonable attorney's fee to Defendant's counsel for its expenses associated with its Motion for Further Sanctions. Defendant shall submit an affidavit to this Court within ten (10) days of receipt of the Order and Judgment filed contemporaneously with this Memorandum Opinion detailing the expenses it has incurred with respect to this case.

---

**3.** There is no evidence as of the date of this Order that Plaintiffs have complied with the portion of Magistrate Judge Sharp's Order providing that Plaintiffs pay costs and a reasonable attorney fee to Defendant pursuant to the Motion to Compel.